UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| Peter McLaughlin,<br>individually and on behalf of all<br>others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>VOLKSWAGEN GROUP OF AMERICA, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)  Civil Action No.<br>)  CLASS ACTION COMPLAINT<br>)<br>)<br>)<br>)<br>) |

CLASS ACTION
COMPLAINT

COMES NOW, Peter McLaughlin, Plaintiff in the above-styled action, files his Complaint both individually and on behalf of a class of similarly-situated individuals against the Defendants VOLKSWAGEN GROUP OF AMERICA, INC., (hereinafter, "Volkswagen"), and, in support thereof, says as follows:

INTRODUCTION

1.   On September 18, 2015 the Environmental Protection Agency (EPA) issued a notice of violation (NOV) of the Clean AirAct (CAA) to Volkswagen AG, Audi AG, and Volkswagen Group of America, Inc. on September 18, 2015. The NOV alleges that four-cylinder Volkswagen and Audi diesel cars from model years 2009-2015 include software that circumvents EPA emissions standards for certain air pollutants. The software produced by Volkswagen is a "defeat device," as defined by the Clean Air Act. California is separately issuing an In-Use Compliance letter to Volkswagen, and EPA

and the California Air Resources Board have both initiated investigations based on Volkswagen's alleged actions.

Affected diesel models include:

    Jetta(MY2009–2015)
    Jetta Sportwagen (MY 2009-2014)
    Beetle(MY2012–2015)
    Beetle Convertible (MY 2012-2015)
    AudiA3(MY2010–2015) Golf (MY 2010–2015)
    Golf Sportwagen (MY 2015) Passat (MY 2012-2015)

This class action concerns the intentional installation of the so-called defeat devices on the diesel Volkswagen and Audi vehicles sold in New Hampshire since 2009 ("Defeat Device Vehicles").

## JURISDICTION AND VENUE

2. This action arises under the U.S. Class Action Fairness Act of 2005, 28 U.S.C. Sections 1332(d), 1453, and 1711-1715, there are believed to be over 100 Class members and the amount in controversy exceeds $5,000,000.00 exclusive of interest and costs.

3. This Court maintains subject matter jurisdiction under 29 U.S.C. § 216(b), and 28 U.S.C. § 1337.

4. Venue is proper in this Court as unlawful practices alleged herein have been committed within the District of New Hampshire.

## PARTIES

5. Peter McLaughlin, Plaintiff, resides at 261 River Road in Lyme, New Hampshire.

6. Volkswagen Group of America, Inc. ("Volkswagen") is a corporation doing business in every U.S. state and the District of Columbia, and is organized under the laws of New Jersey, with its principal place of business at 2200 Ferdinand Porsche Dr., Herndon, Virginia

20171. Volkswagen is therefore a citizen of New Jersey and Virginia. See 28 U.S.C. § 1332(d)(10). It sells the affected diesel model vehicles in New Hampshire.

7. At all relevant times, Volkswagen manufactured, distributed, sold, leased, and warranted the Defeat Device Vehicles under the Volkswagen and Audi brand names throughout the nation. Volkswagen and/or its agents designed the CleanDiesel engines and engine control systems in the Defeat Device Vehicles, including the "defeat device." Volkswagen also developed and disseminated the owners' manuals and warranty booklets, advertisements, and other promotional materials relating to the Defeat Device Vehicles.

## FACTUAL ALLEGATIONS

### Facts Common to All Counts

8. This case arises due to the Defendant's purposeful and intentional breach of the laws of the United States, more specifically, the rules and regulations of the Environmental Protection Agency by selling in the United States vehicles manufactured by its affiliates Volkswagen AG and Audi AG that were equipped with a "defeat device in the cars to evade clean air standards which is illegal and a threat to public health." Defendant intentionally designed and sold cars that misled consumers and regulators about the amount of pollution those cars created and the fuel efficiency they produced and knowingly hid the truth about those cars. As detailed in the EPA's Notice of Violation ("NOV"), sophisticated software in the Volkswagen and Audi diesel vehicles sold by Defendant Volkswagen in the United States detects when the vehicle is undergoing official emissions testing and turns full emissions controls on only during the test. But otherwise, that is at all other times that the vehicle is running, the emissions controls are suppressed. This results in cars that meet emissions standards in the laboratory or state testing station, but during normal operation emit nitrogen oxides (NOx) at up to 40 times the standard

allowed under United States laws and regulations. The software produced and used by Volkswagen is a "defeat device" as defined by the Clean Air Act.

9. Contrary to Volkswagen's self-promotion as a "clean" of "eco-conscious" company; its diesel cars are unhealthy and unlawful. Defendant touts itself as selling more diesel cars in the U.S. than every other brand combined and that the TDI lines of cars are running on "Clean Diesel". Indeed, being both highly efficient and "clean" are the centerpieces of Defendant's diesel engine marketing campaign. "Clean Diesel" is in the very name of the vehicles about which Defendant intentionally mislead the public. Defendant bolsters its apparent environmental bone fides by trumpeting the fact that the Audi A3 TDI and VW Jetta TDI were named the 2010 Green Car of the Year and the 2009 Green Car of the Year, respectively.

10. According to the EPA NOV, Volkswagen installed its "defeat device" in at least the following diesel models of its vehicles (the "Affected Vehicles"): model year 2009-2015 VW Jetta; model year 2009-2015 VW Beetle; model year 2009-2015 VW Golf; model year 2014-2015 VW Passat; and model year 2009-2015 Audi A3. Discovery may reveal that additional vehicle models and model years are properly included as Affected Vehicles.

11. Defendant also launched a "Think Blue" program, which they explained is part of their policy of being "more responsible on the road and more environmentally conscious—not just in our cars."

12. Beyond merely advertising, Defendant supported and directed a website to promote its "clean" diesel technology, vvww.clearlybetterdiesel.org, which says the technology reduces smog and "meets the highest standards in all 50 states, thanks to ultra-low sulfur diesel (ULSD) fuel and innovative engine technology that burns cleaner." The website included a link to "Learn more about the Volkswagen TDI Clean Diesel Technology."

13. Volkswagen has charged a substantial premium for the Affected Vehicles, ironically marketed by Volkswagen as "Clean Diesel."  For example, for the 2015 Volkswagen Jetta, the base S model has a starting MSRP of $18,780. The base TDI S Clean Diesel, however, has a starting MSRP of $21,640, a price premium of $2,860. The Clean Diesel premium for the highest trim Jetta model is substantially higher: The highest level gas Jetta SE has a starting MSRP of $20,095, while the Clean Diesel TDI SEL MSRP is $26,410, a staggering $6,315 premium.

14. Unfortunately for consumers who bought Defendant's cars, Defendant has designed and sold cars that emit pollutants at breath-taking levels, failing state and federal environmental regulations by incredible margins.

15. Most modern engines, including Volkswagen's "Clean Diesel" engines, use computerized engine control systems to monitor sensors throughout a car's engine and exhaust systems and control operation of the car's systems to ensure optimal performance and efficiency. These functions can include controlling fuel injection, valve and ignition timing, and, as in Volkswagen's "Clean Diesel" engines, operating the engine's turbocharger. The engine control computer can, for example, ensure that the air-to-fuel mixture is correct based on sensor readings such as throttle position, amount of air flowing into the engine, and engine temperature. These engine control computers also receive data from sensors in the car's exhaust system that measure the amounts of chemical substances included in the car's exhaust. That data provides a measure of the engine's operation and efficiency, and is thus used by the engine control computer in operating the car's systems to ensure the desired performance and efficiency.

16. Because modern cars include these sophisticated computers and sensors throughout the car's systems, emissions testing sometimes uses a car's existing sensors to measure the presence of pollutants and track compliance with EPA and state emissions standards. Emissions

testing stations plug a diagnostic device into the car's on-board diagnostics ("OBD II") port and use the car's exhaust sensors during the testing procedure to measure the substances emitted. Some states, instead of or in addition to an OBD II diagnostic device, use a measurement probe inserted into the car's exhaust pipe to measure the chemicals emitted.

17. Volkswagen programmed the engine control computers in the Defeat Device Vehicles with software that detects when the cars are undergoing emissions testing, and then operates the car's engine and exhaust systems to ensure that emissions comply with EPA pollutant standards. When the car is not being emissions tested—that is, under the vast majority of operating conditions—the engine control systems operate the vehicle in a manner that does not comply with EPA emissions requirements.

18. In short, this software allows Defendant's diesel vehicles to meet emissions standards in labs or state testing stations, while permitting the vehicles to emit nitrogen oxides (NOx) at up to 40 times the standard allowed under United States laws and regulations during the normal operation of the vehicles.

19. NOx pollution contributes to nitrogen dioxide, ground-level ozone, and fine particulate matter. Exposure to these pollutants has been linked with serious health dangers, including asthma attacks and other respiratory illness serious enough to send people to the hospital. Ozone and particulate matter exposure have been associated with premature death due to respiratory-related or cardiovascular-related effects. Children, the elderly, and people with pre-existing respiratory illness are at an acute risk of health effects from these pollutants.

20. The Clean Air Act has strict emissions standards for vehicles and it requires vehicle manufacturers to certify to the EPA that the vehicles sold in the United States meet applicable federal emissions standards to control air pollution. Every vehicle sold in the United States must be

covered by an EPA-issued certificate of conformity. Under federal law, cars equipped with defeat devices, which reduce the effectiveness of emissions control systems during normal driving conditions, cannot be certified. By manufacturing and selling cars with defeat devices that allowed for higher levels of emissions than were certified to the EPA, Volkswagen violated the Clean Air Act, defrauded its customers, and engaged in unfair competition under state and federal laws.

21.     Although the EPA has ordered Defendant to recall the Defeat Device Vehicles and repair them so that they comply with EPA emissions requirements at all times during normal operation, purchasers of the Defeat Device Vehicles have and will continue to suffer significant harm. First, Volkswagen will not be able to make the Defeat Device Vehicles comply with emissions standards without substantially degrading their performance characteristics, including their horsepower and their efficiency. As a result, even if Volkswagen is able to make Class members' Defeat Device Vehicles EPA compliant, Class members will nonetheless suffer actual harm and damages because their vehicles will no longer perform as they did when purchased and as advertised.

22.     Second, this will necessarily result in a diminution in value of every Defeat Device Vehicle. Not only did Class members pay too much for cars now worth substantially less, but they will end up paying more to fuel their less efficient cars over the years they own their vehicles.

23.     As a result of Volkswagen's unfair, deceptive, and/or fraudulent business practices, and its failure to disclose that under normal operating conditions the Defeat Device Vehicles emit as much as 40 times the allowed levels, owners and/or lessees of the Defeat Device Vehicles have suffered losses in money and/or property. Had Plaintiff and Class members known of the "defeat device" at the time they purchased or leased their Defeat Device Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the

vehicles than they did. Moreover, when and if Volkswagen recalls the Defeat Device Vehicles and degrades the CleanDiesel engine performance in order to make the Defeat Device Vehicles compliant with EPA standards, Plaintiff and Class members will be required to spend more on fuel and will not benefit from the performance qualities of their vehicles as advertised. Moreover, Defeat Device Vehicles will necessarily be worth less in the used marketplace because of their decrease in performance and efficiency, which means that owners of Defeat Device Vehicles will not be able to recoup nearly as much value in the future. The Plaintiff and Class members have and will suffer consequential and incidental damages.

24. Volkswagen does not deny the EPA's allegations.

25. According to media sources, Defendant's CEO, Martin Winterkorn, said in a statement that he was "deeply sorry that we have broken the trust of our customers and the public," and that Defendant would be suspending sales of some 2015 and 2016 vehicles with 2.0 liter diesel engines. Mr. Winterkorn resigned as CEO and stated "Above all, I am stunned that misconduct on such scale was possible in the Volkswagen Group." While Defendant's candor about its breach of trust is notable, it cannot compensate Plaintiff and Class members for the damages they have incurred.

## Named Plaintiff Allegations

26. Plaintiff Peter McLaughlin purchased a 2010 VW Jetta TDI – 2.0L "TDI clean diesel engine" in January 2010 from Seacoast Volkswagen in Greenland, New Hampshire. The Plaintiff also purchased a 2012 VW Jetta TDI – 2.0L "TDI clean diesel engine" in August 2012 from a private individual and I covered by the warranty. The Plaintiff still owns the cars.

27. Plaintiff purchased the cars specifically for their fuel efficiency and "Clean Diesel" technology.

28. On or about September 21, 2015, Plaintiff first learned of Volkswagen scheme to defraud the Environmental Protection Agency and that his car does not, in fact, meet all regulatory requirements as he had previously understood.

## Class Allegations

29. Plaintiff seeks to represent a Class of plaintiffs as

"All New Hampshire consumers who purchased a Volkswagen "Defeat Device Vehicle."

30. The proposed class should be certified under RULE 23(a) and RULE 23(b)(2) and/or (b)(3).

31. **Numerosity:** Plaintiff believes that the Class he seeks to represent exceed one-hundred class members.

32. **Commonality & Predominance:** Common questions of law or fact predominate over individualized questions. These questions include, but are not limited to, the following:

    a. Whether Defendant's automobiles meet the EPA emission requirements;

    b. Whether Defendant installed a "defeat device" in order to make it appear that its automobiles meet the EPA emission requirements;

    c. Whether such conduct is deceptive;

    d. Whether such conduct violates the New Hampshire RSA 358-A:2 et seq.;

    e. Whether the Defendants misrepresented that its automobiles met the EPA emission requirements in order to charge a fee or obtain new customers;

    g. Whether injunctive relief, damages, restitution and/or other equitable relief is an appropriate remedy to correct the alleged violations.

33. **Typicality:** Plaintiff's claims are typical of the claims that a Class member could

assert for Defendant's conduct of misrepresenting that its automobiles meet the EPA emission requirements.

34. **Adequacy:** Plaintiff does not have any conflicts with the proposed Class and there are no defenses (to Plaintiff's knowledge) that are unique to Plaintiff's circumstances. Plaintiff retained counsel who is willing and capable to prosecute the action.

35. **Rule 23(b)(2):** Defendants acted in a uniform manner towards the putative Class members making an award of damages, injunctive, declaratory and other equitable relief appropriate.

36. **Rule 23(b)(3):** As noted above, common questions of law or fact predominate over individualized inquiries. The class action is a superior method for adjudicating these claims because it provides for a more efficient method of resolving questions over the legality of the Defendants' practices and without a class action it is unlikely that absent class members would prosecute this case on an individual basis given the amounts in controversy.

## CAUSES OF ACTION

### Count I

### Breach of Contract
### (Duty of Good Faith & Fair Dealing)

37. Plaintiff incorporates by reference the allegations in paragraphs 1 through 38.

38. The installation of the "defeat device" was not authorized under the terms of Plaintiff and Class members' contract with Defendant.

39. Defendants breached the contract by, among other things, installing the "defeat device," which constituted a breach of the obligation of good faith and fair dealing implied as term of Plaintiff and Class members' contract with Defendant.

40. Plaintiff and Class members were injured as a result of the Defendants' breach of

contract.

## Count II

### Fraudulent/Intentional Misrepresentation

41. Plaintiff incorporates by reference the allegations in paragraphs 1 through 42.

42. Defendant misrepresented that Plaintiff and Class members' met all EPA environmental regulations and did not contain a "defeat device" specifically designed to defeat emission testing programs.

43. Defendant knew that its representation was false and/or intentionally disregarded that truth of the representation.

44. Plaintiff and Class members were injured as a result of Defendant false and/or intentional misrepresentations.

## Count III

### Negligent Misrepresentation

45. Plaintiff incorporates by reference the allegations in paragraphs 1 through 46.

46. Defendants Volkswagen represented to Plaintiff and Class members that their vehicles were "clean diesels".

47. Defendants Volkswagen lacked reasonable grounds for believing the truth of this representation because, Defendants Volkswagen knew or should have known that it created a vehicle that it marketed as able to meet all EPA emissions standards when in fact it did not.

48. Plaintiff and Class members justifiably relied on the representation that they purchased the cars.

49. Plaintiff and Class members were injured as resulted of Volkswagen's negligent misrepresentation.

## Count IV

## Unjust Enrichment

50. Plaintiff incorporates by reference the allegations in paragraphs I through 51.

51. Defendants Volkswagen charged Plaintiff and retained a fee for vehicles that it sold marketed to meet the EPA emission standards at a higher rate than other vehicles offered when in fact said vehicles did not meet the standards.

52. Retention of such proceeds (or any other benefit received) also constitutes an unjust and unreasonable charge, retention of monies and/or profits belonging to and/or obtained from Plaintiff and Class members.

## Count V

## Violations of the New Hampshire RSA 358-A *et seq.*; Regulation of Business Practices for Consumer Protection

53. Plaintiff incorporates by reference the allegations in paragraphs 1 through 54.

54. Plaintiff Peter McLaughlin brings this claim on behalf of himself and the New Hampshire Class.

55. Defendant's misrepresentations, active concealment, and failures to disclose violated the New Hampshire RSA 358-A:2 in the following manner:

   a. Defendant misrepresented that its vehicles had characteristics, benefits, qualities or uses that they did not have (NH RSA 358-A:2 V);

   b. Defendant misrepresented that its vehicles were of a particular standard, quality, and/or grade when they were of another (NH RSA 358-A:2 VII);

   c. Defendant caused confusion or misunderstanding of the certification of the vehicles. (NH RSA 358-A:2II and III);

   d. Defendant advertised its vehicles with an intent not to sell them as advertised (NH RSA

358-A:2 IX);

56. Said conduct is generally and specifically within the meaning of the New Hampshire RSA 358-A:2 et seq. and in the course of business that is prohibited, unfair, and deceptive.

57. The foregoing acts and omissions of the Defendant were undertaken willfully, intentionally, and knowingly as part of its routine business.

58. Defendant's misrepresentations and omissions were material to Plaintiff Peter McLaughlin and members of the New Hampshire Class, such that a reasonable person would consider them important in deciding whether to purchase Defendant's vehicles, and had Plaintiff and members of the New Hampshire Class known the truth, they would have acted differently.

59. The conduct described herein has tremendous potential to be repeated where other consumers similarly-situated will be treated with the same unscrupulous, unethical, unfair and deceptive acts and practices.

60. As a direct and proximate result of the above described practices, Plaintiff Peter McLaughlin and members of the New Hampshire Class sustained damages in an amount to be proven at trial and are entitled to all damages, penalties, treble damages, costs and attorney fees as allowed pursuant to NH RSA 358-A:10 I.

## COUNT VI

**(Breach of Implied Warranty of Merchantability)**
**On Behalf of Plaintiff and the Class**

61. Plaintiff incorporates by reference all preceding paragraphs of this complaint as if fully set forth herein.

62. The Defeat Device Vehicles that Plaintiff and those similarly situated purchased are defective because they are not reasonably fit for the intended use and the reasonably

foreseeable use of operation in compliance with federal and state emissions laws. In fact, Volkswagen installed a defeat device in the vehicles that rendered the emissions control systems defective. Due to the operation of the defeat device, the Defeat Device Vehicles did not comply with emissions standards set by federal law during normal operation of the vehicles.

63. As a direct and proximate result of Volkswagen's breach of the implied warranty of merchantability, Plaintiff and those similarly situated have suffered damages in an amount to be determined at trial.

## COUNT VII

### (Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. 55 2301 et seq.)
### On Behalf of Plaintiff and the Class

64. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

65. Volkswagen's Defeat Device Vehicles are a "consumer product," as that term is defined in 15 U.S.C. § 2301(1).

66. Plaintiff and Class members are "consumers," as that term is defined in 15 U.S.C. § 2301(3).

67. Volkswagen is a "warrantor" and "supplier" as those terms are defined in 15 U.S.C. § 2301(4) and (5).

68. Volkswagen provided purchasers and lessees of Defeat Device Vehicles multiple written warranties as defined by 15 U.S.C. § 2301(6).

69. Manufacturer's Warranty. Defendants provided Plaintiff and those similarly situated with a Manufacturer's Warranty, which provides "bumper-to-bumper" limited express warranty coverage for a minimum of 3 years or 36,000 miles, whichever comes first. This

warranty covers emissions related repairs. This warranty is directly applicable to Defeat Device Vehicles.

70. Federal Emissions Warranty. Consistent with federal law, Defendants provided Plaintiff and those similarly situated with a "performance warranty" and a "design and defect warranty." In the event that a vehicle fails an emissions test, these warranties cover all emissions related parts for 2 years or 24,000 miles (whichever comes first), with the catalytic converter, engine control unit, and onboard diagnostic device covered for 8 years or 80,000 miles (whichever comes first). These warranties are directly applicable to the Defeat Device Vehicles.

71. Volkswagen breached these express warranties by selling the Defeat Device Vehicles with a defeat device that rendered the vehicles' emission control systems defective. Due to the operation of the defeat device, the Defeat Device Vehicles did not comply with emissions standards set by federal law. The defeat devices cannot be repaired or redressed without materially altering the advertised estimated fuel economy and other performance characteristics of the vehicles.

72. Volkswagen also provided Plaintiff and those similarly situated with "implied warranties," as that term is defined in 15 U.S.C. 5 2301(7). As described more fully above, Volkswagen impliedly warranted that the Defeat Device Vehicles possessed specific performance and emissions control characteristics that the vehicles in fact did not possess, and which Volkswagen knew the vehicles did not possess. As a result, the Defeat Device Vehicles are defective.

73. As a direct and proximate result of Volkswagen's breach of these express and implied warranties, Plaintiff and those similarly situated have suffered damages in an amount to be determined at trial.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and those similarly situated, respectfully requests that the Court enter judgment against Volkswagen as follows:

    A.    Certification of the proposed New Hampshire Class, including appointment of Plaintiff's counsel as class counsel;

    B.    An order temporarily and permanently enjoining Volkswagen from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

    C.    An order providing injunctive relief in the form of a recall or free replacement program;

    D.    An award of compensatory damages in an amount to be determined at trial;

    E.    An award of damages in an amount to be determined at trial pursuant to NH RSA 358-A:10 I;

    F.    Award the Plaintiff and Class enhanced compensatory damages as a result of the Defendants' wanton, malicious and oppressive conduct.

    G.    Rescission of the Defeat Device Vehicle purchase contracts and full restitution of the purchase prices;

    H.    An order requiring Volkswagen to pay both pre- and post-judgment interest on any amounts awarded;

    I.    For reasonable attorney's fees and the costs of suit incurred;

    J.    For such further relief as this Court may deem just and proper;

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury as to all issues.

Respectfully submitted this 24th day of September, 2015.

                                                Peter McLaughlin
                                                By and through his attorneys

                                                /s/ Paul M. DeCarolis
                                                Paul M. DeCarolis, NH Bar No. 596
                                                GOTTESMAN AND HOLLIS, P.A.
                                                39 East Pearl Street
                                                Nashua, New Hampshire   03060
                                                603-889-5959

                                                /s/ David M. Gottesman
                                                David M. Gottesman, NH Bar No. 970
                                                GOTTESMAN AND HOLLIS, P.A.
                                                39 East Pearl Street
                                                Nashua, New Hampshire   03060
                                                603-889-5959

                                                /s/ Barney L. Brannen
                                                Barney L. Brannen, NH Bar No. 9027
                                                Brannen & Loftus, PLLC
                                                One Maple Street
                                                Hanover, New Hampshire   03755
                                                603-277-2971